May it please the court, Walter K. Pyle on behalf of Petitioner Bradman Armitage. The trial judge in our case gave a definition of burglary, a traditional definition, that burglary is the entry of a building with the intent to commit a felony or with the intent to commit a theft. The problem with this theory was with regard to, there were two burglaries, one where he entered his father's house in January packing a firearm, second when he entered the Tewitz's garage in September packing methamphetamine. And the California Court of Appeals said that entry with possession of an illegal object doesn't meet the definition of burglary because the entry does not facilitate the felony. So it threw out the first burglary, the one with the possession of the firearm. Now in the second burglary, the same theory applies. If he entered with possession of methamphetamine, that did not facilitate, the entry did not Well let's look at the, you're here under AEDPA review, correct? Yes. It's habeas. So the California Court of Appeals determined that Mr. Armitage was convicted on the basis he entered the garage with the specific intent to steal the car stereo. Yes. Under AEDPA, we owe determination to that deference. What's your best argument that it was unreasonable? That's not the correct standard, Your Honor. This is not an unreasonable application of federal law. The state court did not apply federal law at all. It applied state law. Well, I had a question about that because you argue in your brief that the Court of Appeals did not apply federal law at all. But aren't we supposed to presume that the Court of Appeals applied federal law and then figure out on what basis it was denied? I mean, wouldn't we presume the California Court of Appeals applied void and then ask whether it was an unreasonable application of void under the latest Supreme Court decisions? Well, as I interpret those decisions, that applies when the California Court doesn't say anything one way or the other. But here it said it does not matter whether the evidence could be interpreted in two ways. As long as there's substantial evidence to support under the valid theory, we cannot substitute our judgment for that of the jury. And that's completely backwards from what the Supreme Court said in Strong v. California. So I'm saying, first, don't think that presumption applies when the court actually reasons and says, here's what our reasoning is. And second, they turned Strong v. California on its head. Strong v. California says it does matter. It does matter very much. I guess what confuses me, you make the argument that this was submitted on alternative theories. And yet, as I look at this, there was a general instruction that the court talked about. But then on count six, there was no alternative theory. And he then, when he referred in jury note one, he did not have an alternative theory. And the other inquiry referred them back to page 49 of the jury instructions, which was also not an alternative theory. Wherein lies the ambiguity? It's not an ambiguity. It's wrong. It's submitting it on two theories. But he didn't submit it on two theories. On that count, and that's the only one we're talking about here, I think, count six. On count six, tell me where there was an alternative instruction on count six. When the court said, the defendant is accused in count six of having committed the crime of burglary. Every person who enters the building with the intent to steal or with the specific intent to commit any felony, as you know, is guilty of the crime of burglary. That's an alternative. Okay, but that's not in the jury instruction, is it? Yes, it is. It is? It's not in the written jury instruction. That's what I'm talking about, the written jury instructions. And that's what they're presumed to follow, right? I say no. The Supreme Court says yes. Should we follow them or you? Well, you should follow what the federal law is. I think the Supreme Court's federal, isn't it? Well, I'm sorry, I didn't mean to. At least the one I'm talking about. All right. I don't know the answer off the top of my head. But I count five times that the court said to the jury, you may convict him if you find that he entered with the intent to steal. Okay, what are those times? I saw one general comment, which was at the very beginning an oral instruction. But all of the written instructions that I saw were very specific, only talked about count six specifically. And when there were the two jury questions, he always referred them back to a specific instruction that was not the one that troubles you. Help me. What am I missing here? Where are the other ones? First of all, when the court defined the definition of burglary in count one, it used the term. That's count one. Is that the one that got thrown out? It is. Okay, then what are we talking about? That got thrown out. We're talking about count six here. That does not mean the jury disregarded that for count two. He said this is the definition of burglary. Let me ask you another thing. In your brief, you specifically indicated, you said it is not petitioner's claim that the jury instructions were ambiguous. And that's at your brief, page eight. Yes. Are you changing your position there? Are you saying they were or were not ambiguous? I am saying they were not ambiguous because I'm saying they presented two alternative theories. That's metaphysical, isn't it? Help me with that. What is it? Either it's clear or it's ambiguous. Is this clear? All right. I'm reading from the court of appeals opinion where it says defendant is accused in count six of having committed the crime of burglary. The court of appeals says the instruction was every person who enters the building with the specific intent to steal. Okay, but you're back to count one again. And what my question to you is. No, Your Honor, that's count six. Okay. In your brief, you said that the jury instructions were not ambiguous. I believe they were not. But even if they were, the district court found a reasonable likelihood that the judge, that the jury would have interpreted it to mean possession of amphetamine is sufficient to convict for burglary. Don't we get back to the point that Judge Callahan made, though? We're reviewing this appeal under AEDPA. And we have to follow the restraints of AEDPA in what we review. Whether we would review it in the way you're talking about on a direct appeal is one thing. But where we're coming up on habeas review, it's quite different, isn't it? Well, I have to disagree. I say this is a contrary, it uses the wrong legal rule. It says the court said it does not matter. Okay, but you're just referring to a different part of AEDPA. So you're saying that this is contrary to the law. And what law are you referring to? Are you talking about Boyd? I'm talking about Boyd and, more specifically, Strongberg v. California. Didn't the court of appeal actually conduct a Boyd analysis when it said that Armitage offered only pure speculation that he was convicted on an invalid theory? I believe it's Boyd that when there's two theories presented to a jury upon which they can convict, and there's a reasonable likelihood that the jury convicted on an invalid theory, then that's a due process violation. So isn't that what the court of appeal implicitly did? And it's okay if you answer that. I'm kind of persuaded that that's what it did. It was an unreasonable application, and I have some questions about that for the government. But under these latest Supreme Court decisions, I think if the California court of appeal or the last state court decision doesn't expressly refer to a federal law, that we have to conceive of what basis they could have possibly rejected the claim. That's true on habeas cases where the court simply says petition for review denied or habeas corpus denied. I don't recollect any cases where the court comes out and says it doesn't matter if there's two theories. It doesn't matter if there's two interpretations. It would be wrong if, in fact, there were two theories presented to the jury, and I sense that Judge Smith is questioning whether that was, in fact, the case. I mean, the jury did seem to be confused. The jury was confused, and they asked specifically, can we convict on the basis of the methamphetamine? But the court of appeal, I think, to Judge Wardlaw's point, did more than just conclude that Armitage's claim was pure speculation. What they said in their reasoning, there was nothing erroneous about the instruction for burglary count or the court's responses to the jury questions. Both the instruction and the court's responses to the jury's question properly informed the jurors that in order to convict Armitage of burglary, that to Etessa's house, garage, or whatever, they had to find he entered the garage with the specific intent to steal. We disagree with Armitage's argument that the court implicitly told the jury it could convict him of burglary on any theory other than the theft being the target or the underlying offense. That's what the court of appeal said. What the court said is, when the judge answered the question, it said the theory advanced- But that's what the court of appeal said, and we're reviewing what the last reasoned decision is. And so you're saying they didn't do certain things that it appears that they did. I'm saying it's an unreasonable interpretation of the facts because the jury said, the jury specifically asked, it's not speculation. The jury asked, can we convict him on the basis of possession of methamphetamine? Can we convict him on the basis of his own testimony? And the judge said no. It didn't say no. He said that the theory advanced by the district attorney is theft. And the jury came back and says, are we limited to the theory advanced by the district attorney? And the judge did not answer that. He just referred them back to the original- And that instruction said to steal, right? The intent to steal. My reading is it says both. It sounds like you're changing theories. A minute ago, you were telling me the only part of the equity you were looking at was that they applied the wrong law. I believe they did. Now you're telling Judge Callahan that they got the facts wrong, and that was unreasonable. So you're saying that just everything was wrong. Basically, yes. The court used the district court, as I say, did not analyze whether this was a contrary to proof, and I submit that it is.  Well, you're over your time. Thank you. And so let's hear what the governor has to say, or the warden. Good morning. Good morning, Your Honor. May it please the court. I'm Kevin Vienna, California Deputy Attorney General, for the respondent. Are you back? I was up here a couple of days ago. You look familiar. Yeah. Have you just stayed here? I didn't stay, but it's nice to be back. This is – first, with regard to a question from Judge Smith, I think if it wasn't clear from Mr. Powell, I think it is clear from the record that the trial court, in its written instructions, and the instructions to which it referred the jury when it asked the question, said only – the only theory in that instruction – talked about intent to steal. When it read the instructions, perhaps Judge Brown was ad-libbing a little bit, but in his oral instructions to the jury, he first defined generally what burglary was, but then went on and said very explicitly that in order to find Mr. Armitage guilty, they had to find an entry with the specific intent to steal. And in this particular case, counsel, if I recall correctly, it may have been the same person that wrote the inquiry, but there were two different inquiries from the judge about whether you could go on the other approach, and in each time, the first one he said, you know, you've got to find this, not what the other one was, and then he referred it back to instruction on page 47, both of which were very specific. And if that's the case, aren't we obliged to assume that the jury followed the instructions, the written instructions that the judge gave them? Yes, and I think the district court made that very clear in its analysis of Angelon v. Weeks. The only thing with your summary with which I would take issue is that when the first question was asked, the response was the prosecution's theory. The prosecution's theory is, and he didn't say only, he said the prosecution's theory is with intent to steal. And we've admitted that in hindsight the judge might have been clearer, but we think there was no constitutional error here. My remaining points are really these. Can I just ask a few questions, though, about things that trouble me about this? Okay, so Armitage was tried for both burglaries at the same time. Correct. And the same jury got those instructions. And we're not supposed to just look at the instruction itself. Estelle v. McGuire requires us to look at the instructions as a whole and the trial record, right? Absolutely, Your Honor. And then don't the notes demonstrate that the jury was at least confused about whether they could convict? I mean, they actually did convict on an invalid theory as to the first burglary as the court found. Yes, that's precise, Your Honor. So the standard is reasonable likelihood. What more would Mr. Armitage have to show to establish a reasonable likelihood that the jury in this case convicted on an invalid theory on the second burglary as well? Well, what more he would have to show, I think one circumstance that arises with some frequency is that if the prosecutor or the defense counsel argued the incorrect theory. Or if the trial judge's response to the questions had been erroneous. But the jury wanted to know whether it could convict based on a theory of liability not advanced by the state. How did the responses by the trial judge actually answer that question? Well, I think the first time the question came up, the trial judge said the only theory – well, said the prosecutor's theory. But I think a rational inference from that is that the only theory on which you can convict is with the specific intent to steal. And then when the question was asked again, the court referred specifically to the jury instruction at – I think it's at Supplemental Excerpts of Record, page 178. And that said twice that the prosecutor – or it said for this count, the prosecutor has to show specific intent to steal. And then it said when listing the elements, a couple of inches below that in the written instruction to which the court referred, it said you must find these two elements. Isn't there evidence in the record that in fact some jurors did convict on an invalid theory? I think the – there is what I think is an ambiguous statement, but it provides some support and it lends some support to that theory. It is, as the district court correctly observed, inadmissible. Well, wait. Don't we look at what was before the state court at the time that the state court of appeal made its decision? And so if that was before the state court when it made its decision, then we should consider it maybe something that was, you know, the state court considered. Well, state courts are presumed to know and apply the law, and the law in California is exactly the same as the federal law. That is, evidence regarding juror thought processes is completely inadmissible. Yeah, evidence code 1150 is basically the same principle as federal rules of evidence 606B, right? Thank you, Your Honor. It's just showing that they didn't consider it and reject it. All I can say is it's not addressed explicitly. But it was before them in any event. Well, that was in the record. It certainly was in the record that that statement was made. What I would say is that it was in the record in a hearsay form and somewhat ambiguous. But yes, it was in the record. I don't disagree with that. What was the evidence that he was in the garage with intent to commit another felony? Mr. Armitage took the witness stand and in trying to explain that he did not have the intent to steal when he entered that garage. His theory was that he was under the influence of methamphetamine. So he described first in his testimony why he had failed to appear for his trial on the earlier burglary the preceding day. And then second, he tried to explain what he was doing in the car. He said he was looking for a note. That was nonsensical. And his only explanation for that was that shortly after he had been mistakenly released on bail, shortly after he'd mistakenly been released on bail, he took some methamphetamine. It was described as a single line. I think it's somewhat ambiguous about the time period between when he used that line and when he was in the Tewitt's garage. And he also said that he had used some alcohol. But the people's garage, they didn't know him, right? They did not know him, correct, Your Honor. Okay. So there's that evidence additionally besides what he said. It's a stranger. It's not someone that lives there. It's not the next door neighbor or something along those lines. And his statement was, as the jury saw, completely nonsensical. That is, he was seated in the car. He had taken into the car with him a can of tools that he found in the garage, and he had disconnected some wires beneath the dashboard, and the tape player or the radio for the car had been removed and was sitting on the seat. So when it was argued to the jury, what was the defense theory on the case? The defense was that his alcohol and drug use had prevented him from forming the specific intent to steal. And the jury didn't buy it. Correct. This is not a Pulido case where the jury was instructed on two theories. The trial court never instructed the jury that it could find him guilty of the Tewits robbery based on the theory that he had committed some other felony. The court of appeal noted that, said that the target offense for the first burglary, which was not theft but what was a mistake, what was incorrectly defined as possession of a firearm, they were separately instructed on the elements of that. The jury was never instructed on any other target offense for count six, the Tewits burglary. Therefore, this is not a Pulido case. This is not a case where the jury was instructed affirmatively on two different theories. It is instead a case where the defense, I think, reasonably argued that there was an ambiguity or an inconsistency if you looked at the jury charge as a whole. Well, I'm still kind of troubled by the second note says, are we limited to considering only the theory events by the district attorney or does the law allow us to take into consideration evidence given by defendants' own testimony? We are specifically confused by page 47 of the jury instructions, paragraph 2, line 5, and that's the one you say answers the question, seems inconsistent with the fourth paragraph. So they're specifically confused about that. And the response is the accurate definition of burglary is set forth on page 47. I just don't see how that dispels their confusion. I think the answer to that is quite simply this. The instruction provided a general instruction on the law of burglary and then specified when it defined the elements what they had to find. In order to prove this crime, each of the following elements must be proved, and I would add beyond reasonable doubt, first that someone entered a building and at the time of the entry that person had the specific intent to steal. That is the only theory that is contained in any of the elements. I'm not saying that there wasn't some ambiguity. I agree there is. If you look at the instruction as a whole, there is some ambiguity. But the state court, I think, considering the argument, considering the distinction with count 1 where the jury was specifically instructed on a separate target offense and the absence of that in this but with regard to this case or to this count, reasonably concluded that it was unlikely that the jury had implied or had applied that ambiguity in an unconstitutional way, that is to convict him of an improper theory. So you're saying that assuming there was even with some ambiguity, it's the AEDPA review, that standard, that means there should be a verdict. Yes, Your Honor. What I would say is that the court addressed that claim and said, first of all, they said there was no improper instruction, so it's not a void claim, and they said that it is unlikely that he was convicted on an improper theory. That's addressing the Middleton claim about ambiguous jury instructions. And because that is reasonable as the district court concluded, relief cannot be given. All right. Thank you, counsel, for your time. I'll give you one minute for rebuttal because you were over your time, too. I clarify my answer to Judge Smith's inquiry. The written jury instruction is contained in page 178 of the supplemental excerpts, as counsel said. It says, every person who enters a building with a specific intent to steal or with a specific intent to commit a felony is guilty of the crime of burglary. That's line five the jury had a question about. They said it's inconsistent with the two paragraphs later where it says, the following elements must be proved, and it says the person has a specific intent to steal. So I see that as two instructions. One, a person is guilty of burglary if he enters with the intent to steal or to commit any felony. And second, it says you have to prove the intent to steal. I see those as two different distinct theories of conviction. As for the proof that he had the methamphetamine, the judge asked him, so you went in there with possessing methamphetamine. He says, yes, but they didn't catch me with that. And the judge says, you knew that was a felony. Yes. So the jury knew that possession of methamphetamine was a felony, too. All right. Thank you, counsel. Armitage v. Clark is submitted. We have previously submitted Hall v. Grounds and Escobar-Gonzalez v. Holder. We will take up United States v. Ferguson.
judges: WARDLAW, CALLAHAN, SMITH